

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MYERS C. (MIKE) THURMAN | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | NO. 00-0191 c/w 00-0227 |
| VERSUS | * | |
| | * | SECTION: "K" |
| TRANSOCEAN SEDCO FOREX INC., | * | |
| formerly TRANSOCEAN OFFSHORE INC. | * | MAG. "5" |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * *

### MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING 1993 ACCIDENTS AND AMOUNT OF SETTLEMENT NEGOTIATIONS

Defendant Transocean Offshore Ventures, Inc., hereby moves in limine for this Honorable Court to preclude plaintiff from offering evidence or otherwise making reference to at trial: a) his accidents in 1993 while working for defendant; b) his failure to file suit for his 1993 accident or any alleged reason therefore; c) the amount of and/or cash equivalent of retirement benefits and retirement package offered by defendant to plaintiff; for the reasons that such evidence or references are irrelevant, likely to confuse the issues and mislead the jury and unduly prejudice the defendant, all as is more fully set forth the accompanying memorandum.



Respectfully submitted,

SHARP, HENRY, CERNIGLIA,
COLVIN & WEAVER

/s/ Timothy W. Cerniglia
TIMOTHY W. CERNIGLIA, T.A. (Bar #3964)
MICHAEL REESE DAVIS (Bar #17529)
EDIE CAGNOLATTI (Bar #25603)
2117 World Trade Center
#2 Canal Street
New Orleans, LA 70130
Telephone: (504)586-1555
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record via United States mail, properly addressed, postage prepaid, this 23rd day of January, 2001.

/s/ Timothy W. Cerniglia

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MYERS C. (MIKE) THURMAN<br>Plaintiff | * CIVIL ACTION<br>*<br>* NO. 00-0191 c/w 00-0227 |
| VERSUS | *<br>* SECTION: "K" |
| TRANSOCEAN SEDCO FOREX INC.,<br>formerly TRANSOCEAN OFFSHORE INC.<br>Defendants | *<br>* MAG. "5"<br>*<br>* |

* * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING 1993 ACCIDENTS AND AMOUNT OF SETTLEMENT NEGOTIATIONS**

MAY IT PLEASE THE COURT:

INTRODUCTION

Plaintiff worked for defendant Transocean Offshore Ventures, Inc., improperly referred to as Transocean Sedco Forex, Inc., (hereinafter "Transocean"), from 1990 to 1999. During his employment, plaintiff sustained two accidents and has undergone a number of surgeries.

In 1998, plaintiff was embroiled in extensive negotiations with Transocean over a retirement

1

benefits and disability settlement package. When these negotiations broke down plaintiff filed the instant lawsuit, claiming that he sustained injuries during an evacuation of the drilling rig *Richardson* due to an impending storm, later becoming a hurricane, in August 1999.

It is anticipated that, at trial, plaintiff will introduce evidence of, infer, or make reference to one or more of the following: (a) the one or two on the job accidents in 1993, while working for defendant; (b) his failure to file suit for his 1993 accidents, and an alleged reason therefore of being misled; and (c) the amount of and/or cash equivalent of his retirement benefits and disability settlement package. As is more fully set forth below, such evidence is irrelevant and likely to confuse the issues, mislead the jury, and unduly prejudice defendant. As such, Transocean requests that such evidence or references be excluded from these proceedings.

## PERTINENT FACTS

In January 1990, Plaintiff began his employment with Sonat Offshore Drilling, Inc., (which was later bought by Transocean), as a Sub Sea Engineer II aboard the drilling rig *Richardson*. On February 8, 1993, while working for defendant, plaintiff had a slip and fall and twisted his right knee. On May 17, 1993, plaintiff injured his left arm, when he was hit on his left side by a piece of equipment that came loose while he was working for defendant. Plaintiff subsequently underwent arthroscopic surgery on his right knee on July 21, 1993. On December 28, 1993, plaintiff again twisted his right knee on the job.

Plaintiff did not file suit for his 1993 accidents. Instead, plaintiff was paid stated benefits under Sonat's voluntary compensation program and maintenance until plaintiff returned to work. Plaintiff was released to return to work with no restrictions on August 23, 1993, with only a 3%

2

impairment of the right knee.

In early 1995, plaintiff began treatment for left shoulder pain, wrist pain, and neck pain, all of which he related to his accident of May 17, 1993, although there is no medical evidence to suggest this. On September 11, 1995, plaintiff underwent an arthroscopic subacromial decompression of his left shoulder. Five days later, he was released to light duty work.

In January 1996, plaintiff began seeing Dr. Molleston for evaluation of a possible cervical disc disease. On February 29, 1996, plaintiff underwent an anterior cervical diskectomy and fusion at C4-5 and C5-6 for severe spinal cord compression and a disc herniation. Transocean paid plaintiff benefits under its compensation plan until he was released by Dr. Molleston to return to work on April 29, 1996. Plaintiff went to work on another semi-sermersible drilling rig, again as a Senior Subsea Engineer. Plaintiff continued to have problems with his shoulder and neck and was advised by Dr. Molleston to avoid over exerting himself.

In October 1996, plaintiff was assigned to work as an instructor at Transocean's teaching facility in Morgan City, Louisiana. The plaintiff did not like his job as an instructor and asked to return to his position as a sub sea engineer on a rig. In June 1998, plaintiff was assigned to work as a Sub Sea Engineer aboard the Transocean *Richardson*. He was instructed not to do any heavy lifting or performing any work in excess of what his doctor advised. Plaintiff continued to have problems and often had to lie down and rest during normal working hours.

In December 1998, plaintiff began negotiating a retirement benefits and disability settlement package with Transocean. Transocean sent the plaintiff for a functional capacity evaluation in order to establish an amount of disability. Based on that rating and as a part of an overall package, Transocean proposed to pay the plaintiff residual benefits under the voluntary compensation program

3

in an amount of approximately $34,000. Plaintiff was also due basic retirement benefits, but without future medical insurance benefits. Transocean further proposed to transfer the plaintiff to a land based job, or at least designate it as such, for a year and pay him a salary of $70,000. This would not only increase his retirement benefits but also entitle him to medical insurance.

For approximately nine months, plaintiff and representatives of defendant partook in extensive settlement negotiations by way of telephone calls, e-mails, and face-to-face meetings. After nine months of ongoing settlement talks, negotiations finally broke down in mid September to mid October 1999. The plaintiff declined to accept the retirement benefits and disability settlement package offered to him by Transocean. Within three months, on January 20, 2000, plaintiff filed the instant lawsuit, alleging an injury sustained on August 21, 1999, during an evacuation from the *Richardson*, due to an impending storm. Plaintiff did not report the accident and no report of injury was completed with respect to this incident. In fact, no one with Transocean knew of plaintiff's new claimed injuries until the instant lawsuit was filed.

Transocean believes that evidence of the questionable timing of plaintiff's lawsuit is competent evidence of his motive for manufacturing an accident and lawsuit. Further, the fact that plaintiff never once mentioned his alleged new accident to Perry Hamburger or his assistant, Karen Cothran, in their discussions in August and September of 1999, is also competent and admissible evidence that such an incident never occurred.

However, it is anticipated that, at trial, plaintiff will attempt to introduce evidence of his 1993 accidents and the fact that he never filed suit for the accidents. It is also anticipated that plaintiff will attempt to suggest that he did not file suit because he was misled by Transocean, which suggestion is totally unfounded. Lastly, it is believed that plaintiff will try to introduce evidence of the amounts

4

offered or the cash equivalent of what was offered to plaintiff as a retirement and disability settlement package.

As set forth below, defendant seeks to preclude evidence concerning the 1993 accidents; plaintiff's failure to file suit for the accidents or any alleged or inferred reason for failing to do such; and the amount of and/or cash equivalent of his retirement benefits and disability settlement package offered by defendant, as such evidence is completely irrelevant to the incident upon which this lawsuit is based.

## LAW AND ARGUMENT

1. <u>Legal Standard</u>

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 of the Federal Rules of Evidence provides that evidence which is not relevant is not admissible. <u>See Irvan v. Frozen Foods Express, Inc.</u>, 780 F. 2d 1228 (5th Cir. 199 ) (record of unrelated industrial accident excluded as irrelevant and highly prejudicial in a personal injury action by employee); <u>Shipp v. General Motors Corp.</u>, 750 F.2d 418 (5th Cir. 1985) (affirming trial court's exclusion of film and photographs of other car crashes similar to plaintiff's); <u>Walker v. Yellow Freight Systems, Inc., et al.</u>, 1999 WL 955364 (E.D. La.) (evidence of prior accidents of defendant or defendant's driver excluded as irrelevant); and <u>LeBoeuf v. K-Mart Corp.</u>, 888 F.2d 330 (5th Cir.1989) (evidence of other slip and fall accidents in national chain excluded as not relevant and likely to mislead).

5

Rule 403 of the Federal Rules of Evidence provides in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In weighing probative value of evidence against the danger of unfair prejudice, courts must first examine the necessity for and the probative effect of such evidence. Gross v. Black & Decker, (U.S.), Inc., 695 F.2d 858 (5th Cir. 1983). The trial court is usually accorded broad discretion in determining potential prejudice based upon full array of evidence. The prejudice must be unfair and not simply testimony adverse to the opposing party. Ramos, et al., v. Liberty Mutual Ins. Co., et al., 615 F.2d 334 (5th Cir. 1980). See also Dollar v. Long Mfg., N.C., Inc., 561 F.2d at 618.

When evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents and circumstances are closely similar to the facts and circumstances at issue. Moreover, even when a substantial similarity of circumstances is established, the district court has broad discretion to exclude such evidence under Rule 403. Johnson v. Ford Motor Co., 988 F.2d 573 (5th Cir. 1983). See also McGonigal v. Gearheart Industries, Inc., 851 F.2d 774, 778 (5th Cir. 1988); and Jackson v. Firestone Rubber Co., 788 F.2d 1070, 1075 (5th Cir. 1986).

2.  <u>Plaintiff's 1993 accidents and failure to file suit are irrelevant</u>

The alleged incident upon which this lawsuit is based involves an evacuation of the Transocean *Richardson* in August of 1999, during which plaintiff claims to have been injured. Plaintiff's 1993 accidents, while working for defendant, took place over six years prior to the 1999 rig evacuation upon which this lawsuit is based. As such, the 1993 accidents involve a completely

different set of facts and circumstances and are completely unrelated to the evacuation of the *Richardson*, during which plaintiff claims to been injured, and upon which the instant lawsuit is based. Plaintiff's 1993 accidents and his failure to file suit thereon is irrelevant to the matter currently before this court. As such, these references are inadmissible under Rule 402 of the Federal Rules of Evidence.

If evidence or testimony of plaintiff's 1993 accidents are introduced at trial, confusion of the issues will ensue as the 1993 incidents involve completely different facts and circumstances than the 1999 rig evacuation, upon which this lawsuit is based. Further, any reference to plaintiff's 1993 accidents, or his failure to file suit thereon, will unduly prejudice Transocean if introduced at trial. If the jury is shown evidence of plaintiff's 1993 accidents, the jury will likely be confused and think that the plaintiff is due compensation from Transocean for these accidents. The risk of the jury being mislead by the issues and unfairly punishing defendant as a result of this evidence being introduced, outweighs any probative value that it may have. As such, this evidence should be excluded from these proceedings.

3.    <u>Retirement negotiations with plaintiff are inadmissible</u>

The amount of and/or cash equivalent of retirement benefits and retirement package should also be excluded because such evidence is irrelevant and highly prejudicial to defendant. The retirement benefits and retirement package offered by defendant to plaintiff in 1998 resulted from plaintiff's desire to negotiate benefits under the compensation plan for his prior accidents, as well as his desire to negotiate basic retirement benefits in order to assure that plaintiff's future was secure. Plaintiff ultimately rejected Transocean's retirement package offer. As such, the amount of and/or cash equivalent of retirement benefits offered by defendant is irrelevant. If the jury hears the amount

offered by defendant it may view that amount as an admission by Transocean that such an amount is "owed" to plaintiff. The jury will not understand that plaintiff is no longer entitled to the originally negotiated amount of benefits under the compensation plan for his disability and offered by Transocean on his behalf, as he ultimately rejected the retirement and disability settlement package offer. Such evidence would serve no purpose other than to prove that Transocean is "liable" to plaintiff.

Rule 408 of the Federal Rules of Evidence provides in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is not admissible.

Rule 408 precludes from evidence, settlements or offers to settle, as well as statements made during settlement negotiations, as irrelevant to proving liability. A primary reason for excluding evidence of a compromise is to encourage non-litigious solutions to disputes. Reichenbach v. Smith, et al., 528 So. 2d 1072 (5th Cir. 1976). See also Cates v. United States, 451 F.2d 411, 415-416 (5th Cir. 1971). Rule 408 by its terms does not operate to exclude evidence unless it is offered to prove liability for or invalidity of the claim or its amount. Reichenbach, supra. Whether to admit evidence for another purpose is within the discretion of the trial court. Belton v. Fibreboard Corp., et al., 724 F.2d 500 at 504 (5th Cir. 1984), citing Advisory Committee Notes, Fed. R. Evid. 408 and Reichenbach, supra. (See Morris v. The LTV Corp., 725 F.2d 1024 at 1029 (5th Cir. 1984) (affirmed preclusion of settlement offer to plaintiff because Rule 408 is designed to prevent exactly what appellant seeks to do - prove liability of the defendant by introducing evidence of a compromise or

settlement offer); and <u>Bilski v. Commissioner of the I.R.S.</u>, 69 F.3d 64, 67 (5th Cir. 1995) (affirmed exclusion of settlement negotiations letter as "part and parcel of settlement negotiations" and did not even cover the tax years in question).

In the same way that Rule 408 excludes evidence of settlements or offers to settle, as irrelevant to proving liability, the amount of and/or cash equivalent of the retirement package offered by the defendant should likewise be excluded from these proceedings. Such amount is irrelevant and will unduly prejudice defendant if introduced at trial. These negotiations were the result of Transocean and plaintiff's attempt to amicably negotiate residual benefits due plaintiff from his 1993 accidents, in addition to including his basic retirement benefits therein. As such, they have nothing whatsoever to do with the incident upon which this lawsuit is based.

The purpose of Rule 408 is to encourage settlements of disputes. The amount of the retirement benefits package offered plaintiff was the result of defendant's negotiated attempt to amicably resolve these matters, while providing plaintiff with a secure future. Transocean should not now be punished for having done so. As amounts of settlements are confidential, it would be unfair to defendant for the jury to hear the amount of the retirement package offered plaintiff. If the jury hears this amount, they may view it as an admission by Transocean that such an amount is due the plaintiff, and may unfairly use this amount as a guideline if the jury ultimately finds Transocean liable. Because this amount is irrelevant and highly prejudicial to defendant it should, therefore, be excluded from these proceedings.

## CONCLUSION

Based on the foregoing, Transocean submits that evidence of or references to plaintiff's accidents in 1993, while working for defendant; his failure to file suit for said accident or any alleged

reason for not doing so; and the amount of and/or cash equivalent of retirement and disability settlement benefits package offered by defendant, are inadmissible under the Federal Rules of Evidence, as irrelevant to these proceedings. Further, these references are likely to confuse the issues, mislead the jury, and unduly prejudice the defendant if admitted as evidence or otherwise referred to at trial. Transocean hereby requests that its Motion in Limine be granted, and that the plaintiff be precluded from offering such evidence or otherwise making reference to such evidence at trial.

Respectfully submitted,

SHARP, HENRY, CERNIGLIA, COLVIN & WEAVER

_____
TIMOTHY W. CERNIGLIA, T.A. (Bar #3964)
MICHAEL REESE DAVIS (Bar #17529)
EDIE CAGNOLATTI (Bar #25603)
2117 World Trade Center
#2 Canal Street
New Orleans, LA 70130
Telephone: (504)586-1555
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record via United States mail, properly addressed, postage prepaid, this ____ day of January, 2001.

_____

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MYERS C. (MIKE) THURMAN | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | NO. 00-0191 c/w 00-0227 |
| VERSUS | * | |
| | * | SECTION: "K" |
| TRANSOCEAN SEDCO FOREX INC., | * | |
| formerly TRANSOCEAN OFFSHORE INC. | * | MAG. "5" |
| Defendants | * | |

* * * * * * * * * * * * * * * * * * * *

## ORDER

CONSIDERING THE FOREGOING MOTION:

IT IS HEREBY ORDERED that the motion of Transocean to preclude plaintiff from introducing evidence of, inferring, or making reference to (a) the one or two on the job accidents in 1993, while working for defendant; (b) his failure to file suit for his 1993 accidents, and an alleged reason therefore of being misled; and (c) the amount of and/or cash equivalent of his retirement benefits and disability settlement package, has been considered, and is hereby GRANTED.

New Orleans, Louisiana, this _____ day of _____, 2001.

_____
UNITED STATES DISTRICT JUDGE

11