FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 16 PM 2: 10

FEB 16 2001

LORETTA G. WHYTE
CLERK

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MYERS C. ("MIKE") THURMAN | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | |
| VERSUS | * | NO. 00-0191 c/w 00-227 |
| | * | |
| TRANSOCEAN SEDCO FOREX, INC. | * | SECTION: K |
| formerly, TRANSOCEAN | * | |
| OFFSHORE, INC. | * | MAGISTRATE (5) |
| Defendants | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | JURY TRIAL REQUESTED |

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AND AMENDING COMPLAINT

NOW INTO COURT, comes **MYERS C. ("MIKE") THURMAN**, plaintiff in the captioned proceeding, and, through undersigned counsel, respectfully asks for leave to file the annexed supplemental and amended petition in the captioned matter for the reasons outlined in the Memorandum which accompanies this Motion. I hereby certify that this Motion is opposed.

1

___Fee___
___Process___
X Dktd ___OK___
___CtRmDep___
Doc.No. 51

Respectfully submitted,

LEWIS, KULLMAN & STERBCOW

_____
HARVEY J. LEWIS (No. 8840)
2615 Pan-American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: (504) 588-1500
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been placed in the U. S. Mail, postage prepaid, addressed to counsel of record for the defendant.

New Orleans, Louisiana, this 15th day of February, 2001.

_____
HARVEY J. LEWIS, T. A.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MYERS C. ("MIKE") THURMAN** | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | * | |
| **VERSUS** | * | **NO. 00-0191 c/w 00-227** |
| | * | |
| **TRANSOCEAN SEDCO FOREX, INC.** | * | **SECTION: K** |
| **formerly, TRANSOCEAN** | * | |
| **OFFSHORE, INC.** | * | **MAGISTRATE (5)** |
| **Defendants** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | **JURY TRIAL REQUESTED** |

### MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE
### TO FILE SUPPLEMENTAL AND AMENDING COMPLAINT

MAY IT PLEASE THE COURT:

Your Honor will doubtlessly recall that the instant lawsuit results from an alleged incident occurring on August 21, 1999 when, during evacuation procedures in anticipation of an approaching storm, the plaintiff was caused to perform heavy manual labor, substantially in excess of vocational restrictions set down by his attending physician which defendant had agreed to respect, when the plaintiff was permitted to resume work as a senior sub sea engineer aboard the *D/B TRANSOCEAN RICHARDSON*. Your Honor will also recall that in 1993, while employed by Sonat Offshore, Inc.,

Case 2:00-cv-00191-SRD   Document 51   Filed 02/16/2001   Page 4 of 19

a predecessor of Transocean, plaintiff was involved in two separate accidents, suffering injuries to his cervical spine, left shoulder and right knee. At the time of those 1993 incidents, the plaintiff had contracted with Sonat for benefits under an in-house "Compensation Program." Plaintiff's entitlement to those benefits and details of the related negotiations became involved in the evidence about the August 21, 1999 casualty. Both the plaintiff and the defendant wanted to introduce evidence concerning the discussions, offers, counter-proposals, etcetera growing out of the 1993 incidents because those matters are integrally related to the August 21, 1999 incident as pointed out in the plaintiff's Memorandum in Support of Motion in Limine, copy attached as **Exhibit A** and incorporated herein as set forth in extenso.

It is undisputed that plaintiff is still owed benefits under this compensation plan and those benefits remain unpaid. And Your Honor will recall that the second settlement conference held on February 1, 2001, attended by Mr. Perry Hamburger, Transocean's Risk Manager. During the course of that conference, Mr. Hamburger acknowledged that his company had assumed liability for the benefits due the plaintiff under the Sonat Compensation Program and had also adopted that same plan upon the completion of its merger with Sonat.

In these circumstances, matters relative to the 1993 incident injuries and resulting disability or impairment are not only relevant and probative with respect to the August 21, 1999 litigation, but the plaintiff contends that same evidence establishes Tranocean's liability for benefits due as a result of the 1993 accidents and additional benefits due as a result of plaintiff's increased impairment or disability for work done between January 1, 1999 and July 21, 1999, as well as damages due on account of the August 21, 1999 casualty, and all of these claims should be tried together in this same lawsuit.

F:\Meda\CASES\THURMAN\Pleadings\Memo MtLeave

2

At Your Honor's suggestion, these matters were brought to Judge Duval's attention with a request for a postponement. After hearing argument, Judge Duval postponed the trial and directed undersigned counsel to file a Motion seeking leave to file a supplemental amended complaint which has now been done.

It is obvious that all of these matters are not only relevant, but they should be decided in one proceeding in order to accomplish a just, speedy, and inexpensive trial as required by F.R.C.P. 1.

For these reasons, plaintiff respectfully asks the Court to grant Motion and permit filing this Supplemental and Amended Complaint.

        Respectfully submitted,

        **LEWIS, KULLMAN & STERBCOW**

        _____
        **HARVEY J. LEWIS (No. 8840)**
        2615 Pan-American Life Center
        601 Poydras Street
        New Orleans, LA 70130
        Telephone: (504) 588-1500
        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been placed in the U. S. Mail, postage prepaid, addressed to counsel of record for the defendant.

New Orleans, Louisiana, this __15th__ day of February, 2001.

        _____
        **HARVEY J. LEWIS, T. A.**

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MYERS C. ("MIKE") THURMAN | * | CIVIL ACTION |
|     Plaintiff | * | |
| | * | |
| VERSUS | * | NO. 00-0191 c/w 00-227 |
| | * | |
| TRANSOCEAN SEDCO FOREX, INC. | * | SECTION: K |
| formerly, TRANSOCEAN | * | |
| OFFSHORE, INC. | * | MAGISTRATE (5) |
|     Defendants | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | * | **JURY TRIAL REQUESTED** |

### NOTICE OF HEARING

TO:   TRANSOCEAN SEDCO FOREX, INC. and
       TRANSOCEAN OFFSHORE VENTURES, INC
       Through their attorney of record:
       Timothy W. Cerniglia, Esq.
       Sharp, Henry, Cerniglia, Colvin & Weaver
       2117 World Trade
       #2 Canal Street
       New Orleans, Louisiana 70130

     PLEASE TAKE NOTICE that plaintiff, through undersigned counsel, will bring the attached

Motion for Leave to File Supplemental and Amending Complaint for hearing before the Honorable

*Alma Chasez*  /1:00

Stanwood R. Duval, Jr. on Wednesday, March 14, 2001 at 9:30 a.m. or as soon thereafter as counsel can be heard.

Respectfully submitted,

**LEWIS, KULLMAN & STERBCOW**

_____
HARVEY J. LEWIS (No. 8840)
2615 Pan-American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: (504) 588-1500
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been placed in the U. S. Mail, postage prepaid, addressed to counsel of record for the defendant.

New Orleans, Louisiana, this 15th day of February, 2001.

_____
HARVEY J. LEWIS, T. A.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MYERS C. ("MIKE") THURMAN | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | |
| VERSUS | * | NO. 00-0191 c/w 00-227 |
| | * | |
| TRANSOCEAN SEDCO FOREX, INC. | * | SECTION: K |
| formerly, TRANSOCEAN | * | |
| OFFSHORE, INC. | * | MAGISTRATE (5) |
| Defendants | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | JURY TRIAL REQUESTED |

### SUPPLEMENTAL AND AMENDED SEAMAN'S COMPLAINT FOR DAMAGES AND BREACH OF CONTRACT

TO THE HONORABLE, THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:

Now comes MYERS C. ("MIKE") THURMAN, a person of full age and domiciled in the State of Mississippi, residing at 4720 Highway 11 North, Purvis, Mississippi 39475, through undersigned counsel, and, with leave of court, supplements and amends his original complaint as follows:

I.

Paragraph I is supplemented and amended to provide as follows:

Defendants, **TRANSOCEAN SEDCO FOREX, INC.**, formerly **TRANSOCEAN OFFSHORE, INC.** and **TRANSOCEAN OFFSHORE VENTURES, INC.** are foreign corporations which are qualified to do and/or doing business in this State and judicial district, and are hereafter collectively referred to as "Transocean."

II.

Paragraph II of the original complaint is supplemented and/or amended to provide as follows:

At all relevant times, defendant, Transocean, or a predecessor corporation, Sonat Offshore, Inc., owned, chartered, operated, controlled, and employed the crew of a mobile offshore drilling unit, the *D/B TRANSOCEAN RICHARDSON* formerly the *D/B GEORGE RICHARDSON.*

## FIRST COUNT

III.

Paragraph III of the original complaint is supplemented and/or amended to provide as follows:

The plaintiff was employed on January 12, 1990 by Transocean's predecessor, Sonat Offshore, Inc., and shortly afterwards he signed a contract, as required by his employer, which provided benefits in the event of an on the job injury; a copy of that contract is attached hereto, marked **Exhibit 1** and incorporated herein as if copied in extenso.

### IV.

Paragraph IV of the original complaint is supplemented and/or amended to provide as follows:

On or about February 8, 1993, while working for Sonat Offshore, Inc., as a seaman, aboard the *D/B GEORGE RICHARDSON*, the plaintiff suffered an injury to his right knee and then on May 17, 1993, he was involved in another casualty again while working aboard the same vessel, in which he re-injured his right knee, tore the rotator cuff in his left shoulder, and did multi-level damage to his cervical spine.

### V.

Paragraph V of the original complaint is supplemented and/or amended to provide as follows:

Those two incidents and resulting injuries were covered by the provisions of the contract referred to in paragraph III and plaintiff was entitled to significant benefits including temporary total disability payments equal to 66% of his average weekly wage, payment of all related medical expenses plus a permanent partial disability payment of approximately $40,000.

### VI.

Paragraph VI of the original complaint is supplemented and/or amended to provide as follows:

About 1997, Transocean merged with Sonat Offshore, Inc. and thereafter Transocean and/or its insurers assumed liability for all amounts due plaintiff under the aforesaid Sonat contract but despite amicable demand, plaintiff was paid nothing for the permanent partial disability or impairment he suffered on account of these two 1993 incidents.

## VII.

Paragraph VII of the original complaint is supplemented and/or amended to provide as follows:

Transocean owed plaintiff a duty of good faith and fair dealing arising under Mississippi law regarding all its dealings with plaintiff under and by virtue of said contract attached hereto and marked **Exhibit 1** and incorporated herein as if copied in extenso; in addition, Transocean also owed plaintiff a duty of good faith and fair dealing arising under Mississippi law in its administration and handling of any claim he might have arising under said contract and Transocean's failure to pay plaintiff the amount due under the Sonat Compensation Plan constitutes a bad faith breach of said contract and such said conduct entitles plaintiff to recover punitive damages of $950,000.00 under Mississippi law.

## SECOND COUNT

## VIII.

Paragraph VIII of the original complaint is supplemented and/or amended to provide as follows:

After convalescing from separate surgeries on his right knee, his left shoulder, and on his cervical spine at two levels between 1993 and 1996, the plaintiff returned to work for Transocean as a shore based, subsea engineer instructor in 1997.

IX.

Paragraph IX of the original complaint is supplemented and/or amended to provide as follows:

A position as a senior subsea engineer aboard the drill barge now known as the *D/B TRANSOCEAN RICHARDSON* became open and in June 1998, plaintiff was transferred to and became a permanent member of the crew of that vessel, at an annual wage of approximately $70,000 plus found and valuable fringe benefits.

X.

Paragraph X of the original complaint is supplemented and/or amended to provide as follows:

Before receiving that assignment, Transocean insisted that the plaintiff be reevaluated by his attending neurosurgeon, to assess the nature and extent of the plaintiff's disability and impairment resulting from the injuries he received in the 1993 incidents and to set vocational restrictions and limitations needed to protect the plaintiff from further injury.

XI.

Paragraph XI of the original complaint is supplemented and/or amended to provide as follows:

On May 13, 1998, plaintiff's attending neurosurgeon reported, in writing, to Transocean that the plaintiff was incapable of performing the work of a senior subsea engineer as that position was described by Transocean and that the plaintiff was limited in climbing, working overhead, and not allowed to lift weights over 10 pounds repetitively, and this doctor further recommended that the plaintiff be given a helper to do the manual tasks required of a Transocean senior subsea engineer.

## XII.

Paragraph XII of the original complaint is supplemented and/or amended to provide as follows:

It was understood and agreed that Transocean would only give plaintiff work assignments within these medical/vocational restrictions and limitations when the plaintiff returned to work as a senior subsea engineer aboard the *D/B TRANSOCEAN RICHARDSON*.

## XIII.

In January 1999 there was a change in the rig manager on the *D/B TRANSOCEAN RICHARDSON* and the new rig manager was unaware of the plaintiff's medical conditions and restrictions and over the course of the next six months, the plaintiff frequently was the only subsea engineer aboard the vessel and the trainee who had been assisting plaintiff during other work periods was terminated and not replaced.

## XIV.

As a consequence, the plaintiff's preexisting physical problems were aggravated by the performance of routine tasks and he frequently had to take breaks to rest to try and alleviate the pain.

## XV.

Although he continued to do the essential requirements of his job, the plaintiff's supervisors decided that the plaintiff could no longer adequately do the work of a subsea engineer and that he needed to be induced to retire

### XVI.

Defendant offered the plaintiff a disability/retirement "package" on July 21, 1999, obviously concluding by then that the plaintiff was 100% impaired or disabled.

### XVII.

By virtue of the increased impairment or disability caused by his work activities, between January 1 and July 1999, the plaintiff became and still is entitled to receive additional benefits under the Sonat Compensation Plan which Transocean adopted which amounts to approximately $60,000.

### XVIII.

Not only did Transocean fail to pay this amount in addition to the benefits that the plaintiff was already due on account of the 1993 incidents, in October 1999, Transocean's Risk Manager sent the plaintiff a Receipt and Release referencing the February 8, 1993 incident and insisted that the plaintiff sign that document; a copy of which is attached as **Exhibit 2** and is incorporated herein as if copied in extenso.

### XIX.

If the plaintiff had signed this document he would have surrendered all of his claims, rights, and employment benefits, presumably including his vested pension benefits, not just those growing out of the February 8, 1993 incident, in exchange for payment of $1,800. despite the fact that Transocean acknowledged that the plaintiff was owed $35,000.00 under this compensation plan.

## XX.

Transocean advised that if the plaintiff failed to sign and return the Receipt and Release in ten days, he would forfeit any benefits he was entitled to receive under the compensation plan or otherwise.

## XXI.

At this time, the plaintiff was under active medical treatment and additional surgery on his neck and an operation on his right shoulder had been prescribed for these work related injuries.

## XXII.

Defendant, Transocean refused to pay for this treatment and in these circumstances, the plaintiff retained counsel.

## XXIII.

Transocean breached its duties of good faith and fair dealing owed plaintiff in the following respects:

(1) Transocean's failure to pay the plaintiff the benefits he was due under Transocean's Compensation Plan;

(2) Transocean's failure to provide medical benefits when requested;

(3) Transocean's failure to pay disability benefits due as a result of plaintiff's condition;

(4) Transocean's conduct in seeking execution of the Receipt and Release in October 1999;

(5) Transocean acted with gross and reckless disregard for plaintiff's rights under said contract sufficient to constitute a willful or malicious wrong and a gross or reckless disregard for the rights of plaintiff under said contract.

Defendant's bad faith breaches of said contract and its willful disregard of plaintiff's rights and other such conduct as hereinabove and hereinafter set forth entitle plaintiff to recover additional punitive damages of $1,000,000.00.

### THIRD COUNT

### XXIV.

Although significantly impaired, plaintiff continued working as a subsea engineer aboard the *D/B TRANSOCEAN RICHARDSON* until August 21, 1999 at which time the vessel was on location in the Gulf of Mexico when an approaching storm system caused defendant, Transocean to evacuate the drill barge, starting with crewmembers who the defendant classified as nonessential, which included the subsea engineer, who had been helping the plaintiff and who, in these circumstances was fully capable of performing the required work without the plaintiff's assistance.

### XXV.

As a result of Transocean's decision to require the plaintiff to remain aboard and to perform tasks exceeding his medical restrictions and, as a consequence during the final stage of the storm evacuation, the plaintiff sustained severe, painful, and permanent injuries, including exacerbation of his preexisting cervical condition.

### XXVI.

The additional injuries which plaintiff received and the damages he suffered on account of the August 21, 1999 incident were caused by the negligence of defendant, Transocean, and/or those for whom this defendant is legally responsible and also by the unseaworthiness of the *D/B*

*TRANSOCEAN RICHARDSON* and, as a consequence, plaintiff is entitled to compensatory damages in the amount of $4,250,000.00.

### XXVII.

Jurisdiction of the first and second counts against this defendant is based upon the parties diverse citizenship as the parties reside in or have their principle places of business in different states and the amount in dispute in each count exceeds $75,000.00; while jurisdiction of the third count is based upon the Jones Act and/or the general maritime law of the United States, including the warranty of seaworthiness embodies therein.

WHEREFORE, **MYERS C. ("MIKE") THURMAN** prays for judgment in his favor and against defendant, **TRANSOCEAN OFFSHORE, INC.** and **TRANSOCEAN OFFSHORE VENTURES, INC.**, for damages in the amount of $6,250,000.00 for a trial by jury, interest as provided by law and taxable costs.

        Respectfully submitted,

        **LEWIS, KULLMAN & STERBCOW**

        _____
        HARVEY J. LEWIS (No. 8840)
        2615 Pan-American Life Center
        601 Poydras Street
        New Orleans, LA 70130
        Telephone: (504) 588-1500
        Attorneys for Plaintiff

**PLEASE SERVE DEFENDANT PURSUANT TO THE LOUISIANA WATERCRAFT STATUTE AS FOLLOWS:**
TRANSOCEAN SEDCO FOREX, INC. and
TRANSOCEAN OFFSHORE VENTURES, INC.
Through their attorney of record:
Timothy W. Cerniglia, Esq.
Sharp, Henry, Cerniglia, Colvin & Weaver
2117 World Trade
#2 Canal Street
New Orleans, Louisiana 70130

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**